TEODORA, DOMINGO e INOCENCIO COSTA BELTRÁN, demandantes y apelantes, *v.* JULIÁN PIAZZA CANOSI, FRANCISCO R. DE JESÚS, LORENZA BELTRÁN y LUCIANO CARABALLO, demandados y apelados.

Núm. 6579.—*Sometido:* Abril 3, 1936. *Resuelto:* Junio 9, 1937.

*R. Muñoz Ramos,* abogado de los apelantes; *Gustavo Rodríguez Acevedo,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

José Costa Bianchi por su testamento instituyó como herederos de sus bienes a sus hijos naturales reconocidos Julia, José, Antonio, Teodora, Domingo e Inocencio Costa Beltrán. Al fallecimiento del testador, Teodora, Domingo e Inocencio, entonces menores de edad, quedaron bajo la patria potestad y tutela de la madre natural Lorenza Beltrán.

Entre los bienes dejados por el causante figuraba una finca de 109 cuerdas, dedicada a café. En la escritura dé partición se dió a dicha finca un valor de $5,450 y se adjudicó a los seis herederos en las proporciones indivisas siguientes:

A José un condominio de $650; y a cada uno de los otros cinco un condominio de $950 en el valor fijado al inmueble.

En noviembre 4 de 1926, Lorenza Beltrán, como madre y tutora de sus menores hijos Teodora, Domingo e Inocencio solicitó de la Corte de Distrito de Ponce autorización judicial para en unión de los otros dos condueños Julia y Antonio Costa Beltrán tomar a préstamo $2,500 de los que corresponderían $1,500 a los menores, con garantía hipotecaria de la finca, y con el importe del préstamo adquirir para los tres menores el condominio que en la misma finca tenía José Costa Beltrán, por el precio de $2,000, y dedicar los $500 restantes a reparar daños causados en la finca por un ciclón. Se alegó en la solicitud que el condueño José Costa Beltrán no deseaba continuar en la comunidad de la finca; que había alguien dispuesto a pagar $2,000 por su participación; que sería peligroso introducir como condueño a una persona extraña a la familia; que la finca, dada su pequeñez, no podía dividirse sin sufrir grave depreciación; y que la finca estaba tasada para los efectos contributivos en $8,500. En la vista celebrada en noviembre 5, 1926, declaró la madre peticionaria que su hijo José quería separarse y vender su herencia al corso Salicetti, a quienes sus demás hijos no querían como condueño; que el Banco Cafetero había tasado la finca en $16,000; que José pedía $2,000 por su participación. Declaró Julia Costa Beltrán en el mismo sentido que la madre, añadiendo que la participación de José era una octava parte de la finca y que valía muy bien $2,000; y que ellos necesitaban hacer el préstamo "para poderle comprar a mi hermano y los quinientos para reparar los cafés." Declararon los menores Teodora y Domingo, dando su conformidad

para que se autorizara el préstamo. El fiscal del distrito intervino en el procedimiento y dió su aprobación.

En noviembre 10, 1926, la corte de distrito dictó sentencia concediendo la autorización solicitada y disponiendo:

"Y con el importe de este préstamo adquiera para los referidos menores y condueños mencionados el condominio que en la misma finca rústica tiene don José Costa Beltrán por la suma de dos mil dollars, y los quinientos dollars restantes, se dediquen a reparar el daño que en las plantaciones de café de la propia finca produjo el pasado ciclón."

Por escritura de 11 de noviembre de 1926, Lorenza Beltrán, madre de los menores y actuando en virtud de la autorización judicial concedídale por la corte de distrito, y Julia y Antonio Costa Beltrán, otorgaron hipoteca sobre la finca en cuestión a favor del Dr. Francisco R. de Jesús, para garantizar a éste la devolución del préstamo de $2,500. En dicha escritura se hizo constar expresamente que los cinco hermanos comparecientes eran dueños cada uno de la participación que se les había adjudicado en la partición de la herencia, y se añadió:

"Y el otro condominio representado por la suma de $650 en el valor total de la finca lo hubo la referida doña Julia Costa Beltrán por compra al otro condueño don José Costa Beltrán por escritura número 106 pasada ante el fedatario el día 23 de octubre de 1926. Estas adquisiciones no han sido aún inscritas en el Registro de la Propiedad del Partido pero se llenará este requisito."

En el párrafo Segundo de dicha escritura de hipoteca se hace constar que una copia certificada de la sentencia por la que se autoriza el contrato de préstamo e hipoteca a nombre de los menores, se une a continuación de la escritura para insertarla en la copia. Del récord aparece que así se hizo en la copia expedida al acreedor hipotecario señor De Jesús, la que fué inscrita en 29 de diciembre de 1926.

Con posterioridad al otorgamiento de la mencionada hipoteca, Julia Costa y Beltrán, quien en 23 de octubre de 1926 había comprado el condominio de su hermano José,

vendió una quinta parte de él a cada uno de sus tres hermanos menores, representados por su madre Lorenza Beltrán y a su otro hermano Antonio, por escritura de diciembre 14, 1926. La vendedora hizo constar que ella había adquirido ese condominio para sí y para sus cuatro hermanos. El precio pagado por cada uno de los compradores fué el de $400, o sea la misma cantidad por la que Julia había comprado a José.

Un día más tarde, o sea el 15 de diciembre de 1926, Antonio Costa Beltrán, sus tres hermanos menores, representados por su madre Lorenza Beltrán y Julia Costa Beltrán otorgaron escritura con el objeto de poner fin a la comunidad existente entre ellos, por considerar que la propiedad desmerecería mucho si se adjudicase a cada condueño la participación que le corresponde. Por los términos de dicha escritura, Lorenza Beltrán adjudicó a Julia Costa Beltrán las participaciones que en la finca correspondían a los menores Teodora, Domingo e Inocencio, por el precio de $1,080 para cada uno de dichos menores. Dicho precio cubría el valor del condominio que se le adjudicó a cada menor, por $950, más el valor de una quinta parte del condominio de $650 comprado a José, o sea $130, que hacen el total de $1,080 por condominio. Antonio vendió su participación a Julia en las mismas condiciones. Se hizo constar en la escritura que la partición se hacía sin la autorización de la corte de distrito por considerar que ésta es innecesaria según lo resuelto por este Tribunal Supremo en *Martínez* v. *Registrador de Caguas,* 23 D.P.R. 356.

La adjudicación se hizo sujeta a la hipoteca a favor del demandado De Jesús.

Dueña ya de la totalidad de la finca, Julia Costa Beltrán, por escritura de julio 7, 1927, la hipotecó a Francismo R. de Jesús en garantía de un préstamo de $1,700 vencedero en igual día del 1929.

En 21 de febrero de 1929 el demandado Francisco R. de Jesús inició procedimiento ejecutivo sumario para la ejecu-

ción de las dos hipotecas constituídas a su favor, dirigiendo su demanda contra los herederos de Julia Costa Beltrán, quienes eran su madre natural Lorenza Beltrán y su esposo Luciano S. Caraballo. Seguidos los trámites de ley, la finca hipotecada fué adjudicada a Francisco R. de Jesús e inscrita a su nombre. Y en 20 de noviembre de 1929 dicho señor De Jesús la vendió al otro demandado Julián Piazza Canosi.

En la demanda interpuesta por los menores se pide la nulidad de las hipotecas, traspasos, procedimientos y actuaciones anteriormente relacionados; que se condene al demandado Piazza a devolver a los demandantes los condominios que éstos tenían sobre la finca y a entregarles la posesión del inmueble; que se condene a ambos demandados a rendir cuentas de y a pagar a los demandantes los frutos de la finca durante el tiempo que la poseyeron; y que se condene a todos los demandados al pago de costas, desembolsos y honorarios de abogado.

La petición de nulidad de la primera hipoteca sobre los condominios de los tres menores se basa en la alegación de que la autorización judicial fué concedida para que con el dinero tomado a préstamo se comprase el condominio de José Costa Beltrán y no para la compra que se hizo a Julia Costa Beltrán; que el demandado De Jesús tenía conocimiento, por los términos de la escritura de hipoteca, por la copia de la autorización judicial a ella anexa y por el registro, de que el contrato de préstamo e hipoteca celebrado entre él y la madre de los menores no estaba autorizado por la corte, y que la negociación aprobada por la corte no podía efectuarse porque en la fecha en que se otorgó la hipoteca ya José no era dueño de una participación en el inmueble por haberla vendido a Julia.

Se pide la nulidad del traspaso de los condominios de los menores a su hermana Julia, por el alegado fundamento de que el referido traspaso fué hecho sin autorización judicial. Y como consecuencia se pide la nulidad de la hipoteca constituída por Julia a favor del demandado De Jesús.

La alegada nulidad del procedimiento ejecutivo se basa en las causas de nulidad de los créditos que se ejecutaron y en la alegación adicional de que la subasta de la finca fué anunciada solamente en un periódico local durante los días 5, 12, 19 y 23 de abril, 1929, constando esos hechos en la inscripción de la venta judicial.

Como causa de nulidad del traspaso hecho por De Jesús a Piazza se alega que éste tenía conocimiento por el registro de que su vendedor no tenía título eficaz y válido.

Las defensas del demandado De Jesús se resumen así:

1. Que la autorización judicial para el préstamo de $2,500 fué concedida *por el fundamento de que por la pequeña cabida de la finca, ésta no podía dividirse sin sufrir grave depreciación.*

2. Que para la validez de la escritura de disolución de la comunidad en la finca no era necesaria la autorización judicial, según lo resuelto en *Martínez v. Registrador,* 23 D.P.R. 356; y que en la inscripción de la escritura a favor de Julia Costa Beltrán se consignaron los fundamentos legales en que descansaban los condueños para hacer la división sin autorización judicial en cuanto a las participaciones de los menores.

3. Que el demandado De Jesús no ha percibido ni frutos ni rentas por no haberlos producido la finca, la que estaba totalmente arruinada por el ciclón de San Felipe.

4. Que la suma de $2,500 prestada por él a la madre de los menores fué aplicada por ésta al fin autorizado por la corte, y que de todos modos los menores adquirieron la participación de su hermano José, pagando cada uno la parte proporcional que le correspondía en los $2,500 del préstamo.

5. Que en la fecha en que se otorgó la segunda hipoteca por $1,700, Julia Costa Beltrán era dueña de la totalidad de la finca, por haberla adquirido en virtud de la escritura de partición; que dicha escritura es válida aun cuando no fuera autorizada por la corte; que el demandado De Jesús no intervino en dicha escritura y es un tercero que adquirió de buena fe su título hipotecario, confiando en las constancias del Régistro.

6. Que la segunda hipoteca quedó de hecho y de derecho cancelada, según el Artículo 125 de la Ley Hipotecaria y 132, inciso 3ro., del Reglamento, por no haberse cubierto en la subasta el importe de la primera hipoteca.

En su contrademanda pide el demandado de Jesús, que en caso de que se decretaren las nulidades solicitadas por los demandantes sé condene a éstos a devolverle a De Jesús las sumas con las que dichos demandantes se beneficiaron, a saber:

1. Una mitad del principal de la primera hipoteca de $2,500 y de los intereses, gastos, costas y honorarios, ascendente dicha mitad a la suma de $2,197.50.
2. Una mitad del principal, intereses y crédito adicional de la segunda hipoteca, ascendente dicha mitad a $1,496.

Se pide además que la sentencia por dichas cantidades constituya un gravamen preferente sobre tres quintas partes de la finca o que el pago de esas sumas sea condición previa a la restitución de los condominios a los demandantes.

El demandado Julián Piazza Canosi negó por falta de información los hechos esenciales de la demanda; y como defensa especial alegó su condición de tercero, por no resultar del Registro si se había o no concedido autorización judicial a los menores para la división de la comunidad, y por constar en el Registro válidamente inscrita la escritura de adjudicación por el márshal a De Jesús. Y en su contrademanda pide que en caso de prosperar la acción de nulidad se condene a los demandantes a devolver al demandado Piazza tres quintas partes de la suma de $2,254.64 gastadas por él en mejoras en la finca y en el pago de contribuciones, ascendiendo dichas tres quintas parte a $1,292.80; y que dicha suma constituya un gravamen preferente sobre los condominios de los demandantes o que su pago se imponga como condición previa a la restitución de la propiedad.

Declaradas sin lugar las excepciones previas a la contrademanda, los demandantes contestaron las contrademandas, alegando entre otras cosas que "ninguno de los menores se enriqueció con el todo o parte del referido préstamo, que era al contraerse, enteramente innecesario para beneficio de dichos menores y no fué usado en beneficio de los mismos"; y que por tanto no están obligados dichos menores a devolver

el importe del préstamo; que los menores no se beneficiaron en manera alguna por el traspaso de sus condominios a Julia Costa Beltrán hecho por su madre sin autorización judicial, por haber habido pago alguno de precio.

Celebrada la vista del caso, la Corte inferior dictó sentencia desestimando en todas sus partes la demanda y las contrademandas, todo sin especial condenación de costas. Apelaron los demandantes, señalando como único error de la corte sentenciadora el de haber dictado sentencia declarando sin lugar la demanda.

Hemos estudiado cuidadosamente la transcripción de la evidencia que consta de 363 páginas. De la prueba aducida por ambas partes, en su mayor parte documental, aparecen establecidos los hechos que hemos relacionado cronológicamente al principio de esta opinión.

Las cuestiones que debemos resolver son:

1ª ¿Son legal y equitativamente suficientes los motivos alegados para sostener la nulidad de la hipoteca constituída por la madre de los menores a favor del demandado De Jesús?

Opinamos que no se ha probado causa suficiente para justificar un decreto de nulidad. El fin o propósito fundamental que se perseguía mediante la negociación de un préstamo era proteger a los menores contra el peligro de que uno de los condueños, José, vendiese su condominio a una persona extraña a la familia. Para conjurar ese peligro, anticipóse la condueña Julia y compró el condominio a José por precio de $2,000, con la intención de conservar para sí una quinta parte y transferir a sus cuatro hermanos las cuatro quintas partes restantes, por el mismo precio pagado por ella a José. Con el dinero dado a la madre por el demandado De Jesús, la madre de los menores adquirió para éstos por compra a Julia, por precio de $400 por cada menor, tres quintas partes del condominio que el condueño José amenazaba vender a un extraño. Por los términos del contrato de hipoteca, los tres condueños menores contrajeron la obligación de devolver

$1,500 de los $2,500 tomados a préstamo, de los cuales debían dedicarse $2,000 a la adquisición del condominio de José y $500 para mejoras de la finca. Los otros condueños, Julia y Antonio, gravaron también sus condominios en igual proporción. En otras palabras, cada uno de los cinco condueños se comprometió a devolver $500 del total de $2,500. Y cada uno de ellos obtuvo a cambio de sus $500 de obligación una quinta parte del condominio que perteneció a José, valorado en $400, más $100 en mejoras en la propiedad de la comunidad. Es evidente que el propósito fundamental de la autorización judicial—la adquisición para los otros cinco condueños del condominio de José—fué cumplido. De los hechos probados no se desprende que haya habido intención alguna por parte del acreedor hipotecario de defraudar a los menores. Los intereses y derechos de los menores no han sido lesionados en manera alguna por la negociación del préstamo en la forma en que éste fué realizado. Por el contrario, cada uno de ellos aumentó su participación en el valor total de la finca, fijado por todas las partes en $16,000, en una cantidad igual al montante de la obligación que cada uno contrajo por virtud de la hipoteca. El hecho de que el traspaso del condominio que la Corte autorizó adquirir fuese hecho por Julia, en vez de ser hecho por José directamente, no puede afectar en manera alguna la buena fe con que evidentemente procedió el acreedor hipotecario. Habiéndose realizado el fin legal de la negociación, la variante que hubo en los medios utilizados para su realización es, a nuestro juicio, en ausencia de fraude o confabulación imputable al acreedor, insuficiente para basar en ella la declaración de nulidad de la primera hipoteca. Y no erró la corte sentenciadora al denegar la súplica que se hiciera a ese efecto.

2ª ¿Existen vicios o defectos en la escritura de venta de las participaciones de los menores, hecha por la madre a la condueña Julia, que sean legalmente suficientes para decretar su nulidad, con perjuicio de los demandados De Jesús y Piazza?

Sostienen los demandantes apelantes que dicha escritura es nula por no haber sido otorgada mediante autorización judicial, la que era absolutamente necesaria por ser menores tres de los copartícipes en la comunidad.

En nuestro Código Civil (Ed. 1911) encontramos las siguientes disposiciones:

"Artículo 413.—Serán aplicables a la división entre los partícipes en la comunidad, las reglas concernientes a la división de la herencia.

"Artículo 1027.—Cuando los menores de edad estén sometidos a la patria potestad y representados en la partición por el padre y en su caso por la madre, no será necesaria la intervención ni la aprobación judicial.

"Artículo 1029.—Cuando una cosa sea indivisible o desmerezca mucho por su división, podrá adjudicarse a uno, a calidad de abonar a los otros el exceso en dinero.

"Pero bastará que uno sólo de los herederos pida su venta en pública subasta, y con admisión de licitadores extraños, para que así se haga."

En *Sánchez* v. *Registrador,* 21 D.P.R. 478, y más tarde en *Martínez* v. *Registrador,* 23 D.P.R. 356, esta Corte Suprema sostuvo la validez de escrituras otorgadas en las mismas condiciones que las del presente caso, o sea por la madre con patria potestad, a nombre de los menores, sin intervención o aprobación judicial, resolviendo que la autorización judicial, que para la enajenación de bienes de menores requiere el artículo 299 del Código Civil, enmendado por la Ley núm. 33 de 9 de marzo de 1911, no es aplicable a una división de bienes en comunidad en que están interesados menores de edad, porque dicha división debe regirse por el artículo 413 en relación con el 1027 de dicho código, según el cual no es necesaria esa autorización judicial cuando los menores están representados por el padre o la madre. Conviene observar que en el caso de *Sánchez* v. *Registrador,* supra, se hizo constar lo siguiente: "En la escritura estuvieron representados dos herederos menores de edad por su madre con patria potestad *y sin interés alguno en la herencia.*"

El caso de *Martínez* v. *Registrador,* supra, fué resuelto por esta corte en enero 11 de 1916. La escritura de división de comunidad en el caso de autos fué otorgada en diciembre 15, 1926, e inscrita en el Registro en enero 18, 1927. En la inscripción de la totalidad de la finca a favor de la adjudicataria Julia Costa Beltrán, se dice:

"Se hace constar que la cláusula tercera de la escritura dice: Esta partición hecha en la forma en que queda expresada se funda en lo dispuesto en el caso de *Martínez et al.* v. *El Registrador de Caguas,* Decisiones de Puerto Rico, tomo veintitrés, página 356 hasta 358 vuelto."

Los hechos en *Martínez* v. *Registrador* eran prácticamente idénticos a los del presente caso, con la sola diferencia de que en éste se trata de una finca rústica y en aquél se trataba de una finca urbana. En uno y otro caso la madre que representó a los menores no tenía interés personal en la herencia. Y en ambos casos la totalidad del inmueble fué transferida a un solo condueño, recibiendo los demás en dinero efectivo el importe de sus respectivas participaciones. La decisión en *Martínez* v. *Registrador,* supra, confirmó y siguió la dictada por esta corte en *Sánchez* v. *Registrador,* supra, y ambas concordaban con la interpretación que los comentaristas y tribunales españoles habían dado a los artículos del Código Civil Español equivalentes a los anteriormente citados de nuestro código. Véanse: Scaevola, vol. 18, págs. 296 a 320; Manresa, vol. 7, págs. 651–661.

Con anterioridad a la decisión de *Martínez* v. *Registrador,* supra, en junio 1, 1915, la Corte Suprema Federal había dictado su decisión en el caso de *Longpré* v. *Díaz y Quiñones,* 237 U. S. 512, 59 Law. Ed. 1080, por la que confirmó la sentencia de la Corte de Distrito de los Estados Unidos para Puerto Rico. En dicho caso la madre de un menor y su defensor *ad litem,* sin autorización previa de la corte de distrito, habían celebrado un contrato privado, que fué elevado más tarde a escritura pública, por el cual tras-

pasaron bienes del menor a un acreedor, en pago de deudas. El contrato, que se titulaba "partición de herencia", fué después de su otorgamiento aprobado por la corte de distrito. No obstante esa aprobación *a posteriori,* la Corte Suprema decretó su nulidad, diciendo:

"Aún cuando es obvio que la propiedad dejada por el difunto y que pasó a su heredero el menor, estaba gravada por las deudas del difunto y sujeta a una venta legal para el pago de las mismas, creemos es indiscutiblemente cierto que había una absoluta carencia de facultades por parte de la viuda y del tutor *ad litem* para entregar la propiedad del menor en pago de una deuda reclamada contra los bienes de su padre. Decimos esto porque la llamada partición y la venta de la propiedad por medio de contrato privado estaban completamente fuera de las disposiciones de la ley sobre administración y venta de los bienes de un menor y por consiguiente dicho contrato privado no podía crear derecho alguno en conflicto con el título hereditario del menor."

Al decidir el caso de *Martínez* v. *Registrador,* supra, esta Corte Suprema no tuvo en cuenta la decisión del Tribunal Supremo Federal que acabamos de citar, pero sí la tuvo y la adoptó como la doctrina jurídica aplicable a casos de esta índole al decidir en 28 de enero de 1916 el caso de *Del Rosario* v. *Rucabado et al.,* 23 D.P.R. 473, en el cual la propiedad de los menores había sido traspasada por la madre, sin autorización judicial, a los acreedores del causante. La decisión original sostuvo la validez del traspaso, pero habiéndose solicitado la reconsideración de su fallo, éste fué reconsiderado, expresándose así la corte por voz de su Juez Asociado Sr. Del Toro:

"Basta leer lo que antecede, para comprender que en cuanto a la cuestión esencial de si son o no totalmente nulas las adjudicaciones en pago de deudas hechas directamente a los acreedores en la partición de una herencia en que existen menores de edad, sin haberse obtenido previamente la autorización judicial que para la venta de bienes de menores en general exigen las leyes, el criterio sustentado por la Corte Suprema de los Estados Unidos está en conflicto con el que algunos días antes sostuvo esta Corte Suprema de Puerto

Rico. La Corte Suprema de los Estados Unidos, que tiene jurisdicción de apelación sobre esta Corte Suprema de Puerto Rico, decidió que dichas adjudicaciones son nulas, y su jurisprudencia, cualquiera que pueda continuar siendo el criterio de todos o de algunos de los jueces de este tribunal, debe prevalecer.''

Posteriormente, en *Milán* v. *Registrador,* 41 D.P.R. 98, en *Mercado* v. *Registrador,* 41 D.P.R. 522, y en *Burset* v. *Registrador,* 49 D.P.R. 49, esta corte sostuvo que la adjudicación de una finca poseída en común, a uno de los comuneros, no es una división de la comunidad y sí una enajenación de la propiedad, para la validez de la cual se necesita la autorización judicial y la subasta pública que requiere el artículo 388 del Código Civil, cuando alguno de los comuneros sea menor de edad.

██ La venta de los condominios de los menores por la madre de éstos a la comunera Julia, no solamente fué hecha sin autorización judicial y sin cumplir el requisito de la subasta pública, sino que se hizo con perjuicio y menoscabo del patrimonio de dichos menores. Estos eran dueños de tres quintas partes de una finca cuyo valor se había fijado por el banco y las partes en la suma de $16,000; y la misma adjudicataria Julia aceptó ese valor al pagar $2,000 por el condominio que por una octava parte tenía José en la finca. Las participaciones de los tres menores tenían un valor total de $9,600 y respondían de $1,500 de la primera hipoteca a favor del demandado De Jesús. Por los términos de la adjudicación en controversia Julia adquirió el interés de los menores por precio de $1,080 para cada menor, y asumió la obligación de pagar los $1,500 a De Jesús. Por un precio de $4,740 se despojó a los menores de propiedad que valía $9,600, haciéndoles sufrir una pérdida de $4,860. Es para evitar la consumación de negociaciones lesivas para los intereses de los menores, como la llevada a efecto en el presente caso, que la ley y la jurisprudencia de esta jurisdicción exigen que los intereses de los menores sean protegidos por la intervención judicial y la venta al mejor postor. Al

hacer el préstamo de $1,700 a Julia Costa Beltrán, el demandado De Jesús sabía por las constancias del Registro que el título de la prestataria estaba viciado de nulidad en cuanto a las tres quintas partes que ésta había adquirido de los menores, por no haberse cumplido los requisitos legales. Su defensa de tercero no está sostenida por los hechos. Cuando se llevó a efecto la llamada división de comunidad ya la Corte Suprema Federal había establecido la doctrina de *Longpré* v. *Díaz,* supra, que sostiene la nulidad de una división de esa naturaleza cuando no ha sido autorizada judicialmente.

Debemos sostener, por lo tanto, que la venta de las participaciones de los menores es nula y que también lo es la hipoteca de $1,700 constituída por Julia Costa Beltrán, en cuanto a las tres quintas partes de la finca. La corte inferior erró al declarar dichos actos válidos y obligatorios para los meneros demandantes.

3ª. La nulidad del procedimiento ejectutivo sumario mediante el cual el demandado De Jesús ejecutó los dos créditos hipotecarios es consecuencia inevitable de la declaración de nulidad del crédito por $1,700. Los demandantes, quienes nunca dejaron de ser dueños de tres quintas partes de la finca, por ser nula e inexistente la venta hecha por su madre, no fueron requeridos en manera alguna para el pago de la primera hipoteca que se ejecutaba conjuntamente con la segunda de $1,700, y no quedaron obligados por la sentencia de ejecución. Debemos, por lo tanto, declarar nulos el procedimiento ejecutivo, la subasta y la adjudicación de la finca al demandado De Jesús y la venta hecha por éste al demandado Piazza, quien tampoco puede alegar su condición de tercero, por haber adquirido la finca con conocimiento por las constancias del Registro de las causas de nulidad del título de su vendedor.

4ª. La reclamación que en su contrademanda hace el demandado Piazza por la suma de $2,254.64, por reparaciones y mejoras hechas por él en la finca y por contribuciones

por él satisfechas, no aparece sostenida por prueba alguna. La Corte hizo constar en su opinión que las partes habían estipulado que la evidencia sobre tales extremos se practicaría quince días después de ser firme la sentencia, en el caso de que dicha contrademanda fuese declarada con lugar. Y habiendo sido desestimadas la demanda y la contrademanda no se practicó tal prueba. No estamos por tanto en condiciones de poder fijar la cuantía de la reclamación. Lo único que podemos resolver y resolvemos es que no siendo el demandado Piazza un poseedor de buena fe, tiene derecho a que se le reintegren por los demandantes tres quintas partes de los gastos hechos por él para la conservación de la finca y para pago de los tributos impuestos al inmueble, sujeto desde luego a la obligación de reintegrar a los demandantes las tres quintas partes de los productos y beneficios que la finca le hubiere producido durante el tiempo que estuvo en posesión del inmueble y a partir de la fecha de la interposición de la demanda de nulidad.

Por las razones expuestas *debe dejarse sin efecto la sentencia dictada por la Corte de Distrito de Ponce en fecha 2 de junio de 1933, y en su lugar dictarse otra que deberá contener los siguientes pronunciamientos:*

1. Declarando válida y subsistente la hipoteca de $2,500 otorgada por la madre de los demandantes a favor del demandado Francisco R. de Jesús, debiendo responder los condominios de los demandantes, equivalentes a tres quintas partes de la finca, de la suma de $1,500 de principal, con intereses al tipo estipulado de 12 por ciento anual desde noviembre 11 de 1926 hasta su definitivo pago, sin costas.

2. Declarando nula e inexistente en cuanto a las participaciones de los demandantes, la división de comunidad consignada en la escritura núm. 131 otorgada en la ciudad de Ponce el día 15 de noviembre de 1926, ante el Notario Lic. Cipriano Olivieri; y ordenando la cancelación de la inscripción de la misma en el registro, la que aparece al folio 181 del Tomo 90 de Adjuntas, finca núm. 1173, quintuplicado, inscripción 14.

3. Declarando nula e inexistente, en cuanto a las participaciones de los demandantes, la hipoteca por $1,700 constituída por Julia

Costa Beltrán a favor de Francisco R. de Jesús, por escritura núm. 87 de fecha julio 7 de 1927; y ordenando la cancelación de su inscripción practicada al folio 183 vuelto del Tomo 90 de Adjuntas, finca núm. 1173, quintuplicado, inscripción 16ª, en cuanto a las participaciones de los demandantes.

4. Declarando nulos en cuanto a los condominios de los demandantes el procedimiento ejecutivo sumario hipotecario, Civil núm. 3586, seguido ante la Corte de Distrito de Ponce por Francisco de Jesús y Ruiz de Porras v. Sucesión de Julia Costa y Beltrán, para la ejecución de las dos hipotecas; la subasta y adjudicación de la finca al acreedor hipotecario; y la venta hecha por éste al demandado Julián Piazza · Canosi, debiendo cancelarse en el registro, en cuanto a las participaciones de los demandantes, las inscripciones de dicha adjudicación y venta, que constan, respectivamente, al folio 184, vuelto, Tomo 90 de Adjuntas, finca núm. 1173, quintuplicado, inscripción 17ª, y al folio 188 del mismo Tomo y finca, inscripción 18ª.

5. Declarando con lugar la contrademanda del demandado Francisco R. de Jesús en cuanto a la primera causa de acción en ella alegada y condenando a los demandantes Teodora, Domingo e Inocencia Costa Beltrán a pagar al demandado Francisco R. de Jesús la suma de $1,500, principal de la hipoteca que grava las participaciones de dichos demandantes, más intereses sobre dicha suma al 12 por ciento anual desde noviembre 11 de 1926 hasta la fecha del pago, sin especial condenación de costas, constituyendo esta parte de la sentencia un gravamen preferente sobre los condominios de dichos demandantes en la finca. Disponiéndose que esta sentencia no podrá ser ejecutada hasta que se hayan fijado definitivamente los derechos de las partes en cuanto a las reclamaciones sobre mejoras hechas en la finca y sobre rentas producidas por la finca y percibidas por los demandados.

6. Devolviendo el caso a la Corte de Distrito con instrucciones de que proceda a practicar la prueba en cuanto a la contrademanda formulada por el demandado Piazza, en la que reclama el importe de los gastos hechos por él en la conservación de la finca y para pago de contribuciones; y de que requiera a los demandados y contrademandantes De Jesús y Piazza para que rindan cuenta a los demandantes del importe de los frutos y beneficios que uno y otro percibieran o hubieren podido perci-

bir durante el tiempo que cada uno de ellos estuvo en posesión del inmueble; y que después de oír la prueba de ambas partes proceda a dictar la sentencia que a su juicio procediere.

7. Todo sin especial condenación de costas.

El Juez Asociado Señor Córdova Dávila, aún cuando no se encontró presente en el momento en que se firmó la sentencia, intervino en la vista del recurso y en la discusión del mismo en el seno de la corte, habiendo leído la opinión y mostrado su conformidad con ella.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SEÑOR HUTCHISON, CON LA CUAL CONCURRE EL JUEZ PRESIDENTE SEÑOR DEL TORO

Seis hijos, tres de los cuales eran menores, adquirieron por herencia una pequeña plantación de café. En octubre 23, 1926, Julia Costa, una de las mayores, adquirió de José Costa, el mayor, la participación indivisa de éste en la finca. La venta se efectuó por un precio de $2,000. Doce días más tarde la viuda, a nombre y representación de sus hijos menores de edad, solicitó de la corte de distrito autorizara a los menores a otorgar una hipoteca, alegando que existía necesidad para ello y para proteger la participación de éstos en la propiedad.

Las razones expuestas en la petición fueron en síntesis: Que el hijo mayor, José Costa, deseaba salir de su interés en la propiedad y no estaba dispuesto a continuar como copartícipe. Que él había recibido una oferta de $2,000 de un tercero; que la intromisión de un extraño sería desastrosa y que a fin de evitar el desastre inminente se hacía imperativo que se otorgara la hipoteca para recaudar los fondos requeridos para comprar a José Costa su participación indivisa. Julia Costa, al igual que la madre, declaró durante la vista sobre éstos y otros detalles. Del testimonio de ella se desprendía que cierto señor, natural de Córcega, había ofrecido $2,000 a José por su participación indivisa. Que este señor corso ya había demostrado una disposición poco

amistosa hacia los otros herederos y que si se le permitía que entrara como condueño el resultado inevitable sería por demás desfavorable a los intereses de los menores.

José Costa se había casado y tenía establecida su propia residencia con anterioridad a la fecha en que efectuó el traspaso a su hermana Julia. En el momento de la vista Julia aún vivía bajo el mismo techo que la madre. Esta última era una mujer analfabeto. Si tenía o no conocimiento del hecho de que Julia ya había adquirido la participación indivisa de José, ello es cuestión que carece de importancia. Bien Julia, o Julia y su madre, no sólo ocultaron la verdad, sino que deliberadamente falsearon los hechos y perpetraron así un fraude hacia la corte. En su consecuencia, la supuesta autorización judicial era una nulidad absoluta, sujeta a ser atacada colateralmente. De todos modos, la corte de distrito no autorizó el otorgamiento de una hipoteca por los menores con el fin de tomar a préstamo el dinero necesario para adquirir de Julia la participación indivisa que ya ésta había obtenido de José.

La presunta autorización judicial estaba fechada el 10 de noviembre de 1926. Al siguiente día se otorgó la hipoteca. En ésta se hacía constar que Julia había adquirido de José la participación de éste en la propiedad el 23 de octubre de 1926 por escritura otorgada ante el mismo notario que redactó la de hipoteca. En la hipoteca se hacía referencia a una copia certificada de la autorización judicial que se acompañaba a la misma. En ella se hacía constar que esta copia certificada de la autorización judicial se unía a la hipoteca a fin de que la misma pudiese ser "insertada en la copia". Fué incluída en la primera copia de la escritura de hipoteca expedida a favor del acreedor el día de su otorgamiento. Con esta copia certificada de la autorización judicial el acreedor fué plenamente informado del objeto y fin de tal autorización y de los supuestos hechos en que la misma se basaba. Por la cláusula ya mencionada el acreedor fué plenamente notificado de que la

situación que la autorización judicial trataba de afrontar había dejado de existir antes de presentarse la petición. El sabía que el fin para el cual se había autorizado el otorgamiento de una hipoteca no podía ser cumplido toda vez que el mismo ya se había efectuado antes de solicitarse la autorización judicial. Sabía también que la corte de distrito no había autorizado el otorgamiento de una hipoteca para ningún otro objeto. Los casos que resuelven que un acreedor hipotecario no está obligado a ver que el producto de la hipoteca sea debidamente invertido, no son aplicables a los hechos del presente caso. La hipoteca no estaba autorizada y era nula en lo que a la participación indivisa de los menores se refería.

En diciembre 14, 1926, Julia Costa traspasó a cada uno de los menores una participación indivisa del condominio pro indiviso que ella había adquirido de José. En esta escritura de enajenación ella hacía constar que había actuado por sí y en representación de los otros condueños en la compra de la participación de José.

Si, conforme sugieren ahora los apelados, el objeto al comprarle a José fué impedir que éste vendiera a un extraño, mientras estaba pendiente el procedimiento de autorización judicial, la manera más natural y efectiva de asegurar tal resultado hubiera sido inscribir la escritura inmediatamente. Véase el artículo 1362 del Código Civil (edición de 1930). Esto no se hizo hasta después de haberse obtenido la autorización judicial y otorgado la hipoteca.

En el juicio del presente caso el notario que redactó tanto la escritura en que José le vendía a Julia como la hipoteca, declaró como testigo de los apelados respecto a otros asuntos, mas no mencionó ninguna relación de confianza (*trust*).

La cláusula relativa a la capacidad fiduciaria de Julia al adquirir la participación de José es demasiado tardía. No se hizo mención de tal capacidad en la venta hecha por José a Julia. La cláusula está directamente en conflicto con la declaración de Julia en torno a la necesidad de adquirir

la participación indivisa de José para impedir que éste vendiera la misma a un extraño que le había ofrecido $2,000. Es inconsistente con el hecho de que al día siguiente a la autorización judicial, Julia se había hecho pasar como la dueña de la participación indivisa que ella había adquirido de José y como tal dueña hipotecó la misma junto a su participación original indivisa en la finca.

En adición a todo esto el 15 de diciembre y dentro de las 24 horas de haber traspasado a los menores, Julia adquirió de ellos no sólo la participación indivisa que ella les había traspasado el día anterior, sino también toda la participación de éstos en la finca. Conforme se hace constar en la opinión de la mayoría, ella pagó por toda esta participación menos de la mitad de su valor justo y razonable. Fuera del hecho de que estas dos enajenaciones se otorgaron ante dos notarios distintos, la transacción en su totalidad no hubiese variado de haberse hecho en un solo documento, a menos que debamos asumir que el pacto relativo a la venta efectuada por los menores de su participación total en la finca, por menos de la mitad de su valor material, se hiciera luego de otorgada la primera escritura y antes de otorgarse la segunda. No hallamos base satisfactoria para tal hipótesis.

El único propósito fijo de la petición solicitando autorización judicial fué el comprar a José la participación indivisa que éste se proponía vender a un extraño poco amistoso. El hecho de que Julia ya había adquirido la participación de José fué cuidadosamente ocultado a la corte. Si en la petición se hubiera hecho constar la verdad o si los testigos la hubieran dicho durante la vista, no es probable que la corte hubiera autorizado el otorgamiento de una hipoteca con el fin de poner a los menores en condición de adquirir de Julia un interés proporcional en la participación indivisa adquirida por ella de José, en el entendido de que la madre de los menores vendería a Julia, sin autorización judicial y por un precio inadecuado, toda la participación de los menores en la finca

objeto de la hipoteca. Sea ello como fuere, no hubo preten-
siones de semejante objeto al tiempo en que tuvo lugar el
procedimiento ni al momento de otorgarse la hipoteca. Em-
pero, se hacía necesaria la autorización judicial si, con algún
fin, había de otorgarse una hipoteca sobre toda la propiedad.

Si eliminamos la teoría de una autorización judicial para
permitir a los menores adquirir de Julia, lo que por razones
ya expresadas nos parece insostenible, la conclusión alterna-
tiva es que la autorización judicial se obtuvo con el fin no
revelado de permitir que Julia se convirtiera en dueña de
toda la propiedad en las condiciones ya indicadas.

Si Julia en realidad hubiese adquirido la participación in-
divisa de José para ella y los otros copartícipes, incluyendo
a los menores, si ella no tenía ningún motivo ulterior, si ella
nada tenía que ocultar a la corte, si ella no tenía para aquella
época la intención de obtener de la madre de los menores
toda su participación en la finca sin autorización judicial y
por un precio inadecuado, entonces no había necesidad de
tergiversar los hechos ni de hacer alegaciones falsas ni de
declaraciones perjuras, como tampoco de obtener una au-
torización judicial para adquirir de José su participación
indivisa con el fin de impedir que éste vendiera la finca a
un extraño. En ausencia de una explicación sobre el mo-
tivo por el cual se obtuvo tal autorización bajo falsas si-
mulaciones, la mera formalidad de una enajenación a los me-
nores por parte de Julia de ⅗ de la participación indivisa
previamente adquirida por Julia de José (como paso preli-
minar a la inmediata reenajenación de tales ⅗ partes a Julia
por la madre de los menores por menos de la mitad del pre-
cio a que ellos compraron), salta a la vista como el peso final
de un mal uso notable del procedimiento fijado por el artículo
159 del Código Civil (ed. de 1930).

No importa cuál haya sido el verdadero motivo que se
tuvo para obtener una autorzación judicial, la enajenación he-
cha por Julia a los menores no cumplió el objetivo principal
de esa autorización conforme éste se hacía constar en la auto-

rización misma. Fué en realidad un designio transparente intentado con el fin de dar algún color de plausibilidad a la teoría de que el objeto primordial de la autorización judicial se había realizado. La verdad fué, y es, conforme ya hemos demostrado, que el objetivo de la autorización judicial se había efectuado doce días antes de radicarse la petición en que se solicitaba tal autorización.

El hecho de que el acreedor hipotecario no fuera un partícipe activo en el fraude no es un factor decisivo en el caso. Baste decir que debe considerarse que él tenía conocimiento de que la primera hipoteca era una absoluta nulidad por faltar la autorización judicial.

Todo el producto de esa hipoteca fué directa o indirectamente a Julia Costa. El criterio contrario tan sólo puede ser sostenido tomando en consideración la forma e ignorando la substancia de la transacción en su integridad.

Según la sentencia de esta Corte los menores (a menos que puedan pagar $1,500 con intereses al 12 por ciento anual a partir de noviembre de 1926), perderán sus $\frac{3}{5}$ partes en la finca hipotecada no obstante la nulidad absoluta de la hipoteca y no embargante el conocimiento que el acreedor hipotecario tenía de tal nulidad.

Por tanto, el infrascrito disiente de los pronunciamientos primero y quinto de la sentencia dictada por este Tribunal y de aquella parte de la opinión de la mayoría que tiende a sostener dichos pronunciamientos. Está autorizado para manifestar que el Juez Presidente Sr. del Toro concurre en esta opinión disidente.