## FONTENOT v. HER HUSBAND.

Where prescription is pleaded, for the first time, in the Supreme Court, the party to whom it is opposed may require the case to be remanded for trial upon that plea. C. P. 902.

APPEAL from the District Court of St. Landry, *Overton*, J. *Swayze* and *Taylor*, for the plaintiff. *W. B. Lewis*, for the appellant. *Martin*, for the intervenors. The opinion of the court was pronounced by

ROST, J. The plaintiff sued her husband for a separation of property, and asked to be authorized to resume the administration of the slave *Hélène* and her descendants, whom she alleges to be her paraphernal property. The defendant filed a general denial; and further averred: that he married the plaintiff, on the 12th day of January, 1806; that she was then in possession of

the slave *Hélène*; that the laws then in force regulate his matrimonial rights; FONTENOT
that under those laws the issue of slaves held by the wife, as paraphernal prop- HER HUSBAND.
erty, fell into the community; and that should the plaintiff's action be sustained,
he is entitled to one undivided half of the slaves mentioned in her petition.
After issue joined, the children of the defendant by her first husband, Don
Diego Lafleur, intervened, alleging that the slave *Hélène* and her ascendants
belonged to them, by inheritance from their father. The court below, being of
opinion that the plaintiff and the intervenors were each entitled to one undi-
vided half of the slaves, gave judgment accordingly, and authorised the plain-
tiff to resume the administration of her paraphernal property. From this
judgment the defendant alone has appealed, and the other parties pray that it
may be affirmed.

The claim for a decree of separation of property appears to be abandoned
by the plaintiff, and the only question presented by the appeal is, in relation
to the ownership of the slaves claimed. The facts material to that issue are as
follows :

The plaintiff was married to *Don Diego Lafleur*, on the 14th of July,
1795. On the 18th of August, 1796, *Lafleur* purchased and paid for the slave
*Hélène* ; he subsequently died, and the plaintiff married the defendant as al-
ready stated. On the 5th of August, 1806, an inventory and appraisement of
the property held in common between her and the children of the first mar-
riage was made, at her request, she was called upon to declare all the property
belonging to the community, and gave the slave *Hélène* as forming part of it.
In her application to have the inventory and appraisement made, she expressed
her desire of having guardians appointed to her children, and prayed that suit-
able persons might be appointed, and legal proceedings had to ascertain and set
apart their respective shares in the succession of their father. The judge
made the preliminary orders, and on the 1st day of September, 1806, a judi-
cial sale of all the moveable property belonging to the community and the suc-
cession took place.

No written evidence of a partition, or of any subsequent proceeding in the
succession of *Lafleur*, is found at this day in the office where the law required
it to be deposited ; nothing in the records of the Court of Probates shows who
was appointed tutor of the minors ; but obligations and receipts adduced in
evidence, bearing dates from 1807 to 1822, show that *Garrigues Flaujac* acted
in that capacity, and that he had the funds of the succession in his hands. No
record of a judicial sale of the slaves belonging to the community, or of any other
lawful alienation of them, now exists ; but three of the intervenors have each
given to *Garrigues Flaujac*, their acting tutor, a receipt for the sum of $383,
which they state to be in full of the fifth coming to them in the succession of
their father, amounting to the sum of $1,916 50. This amount is probably
made up of one-half of the proceeds of the sale of the moveables added to one-
half of the appraised value of the slaves.

Having before us the evidence of the application of the plaintiff, that the
share of her children in the succession of their father might be ascertained in
due course of law, the first orders made upon that application, and the re-
ceipt of three of the heirs showing that the amount of the succession had been
liquidated and ascertained, it is a serious question whether, after an acquies-
cence of more than forty years, the rule, *Probatis extremis præsumuntur media*,
should not be applied. It is true that this rule does not generally extend to
records and public documents, when it is known that suitable buildings have

FONTENOT
v.
HER HUSBAND.

been at all times provided for their preservation, and that proper care has been taken of them; but it is an historical fact that such is not the case with the ancient records of Louisiana; and as we observed in the case of *Gibson* v. *Foster*, *ante* p. 503, if the validity of ancient titles originating in judicial proceedings was made exclusively to depend upon the records, as they might be found at any subsequent time, the surest way to destroy private rights would be to ascend to their origin.

In this case no reasonable doubt can exist that *Garrigues Flaujac* was the tutor of the minors, and yet his appointment, his bond, and his oath, are nowhere to be found.

If we should come to the conclusion that there was a partition of some kind, it is probable that the claim of the intervenors to set it aside, or to recover any part of the property of the succession, would be barred by the time that has elapsed since they became of age. The plea of prescription was filed in the Supreme Court, and as it may be material in the decision of the cause, the application of the appellees that the case be remanded, must be granted.

It is extremely desirable that cases like this, in which courts of justice have nothing but remote probabilities to act upon, should be settled by the parties themselves, in a spirit of mutual justice; and we earnestly recommend that course.

The judgment in this case, so far as it affects the defendant, is reversed, and the case remanded for further proceedings; the appellees paying the costs of this appeal.