Our former decree is recast, so as to read as follows, to wit:

It is therefore ordered that the judgments of the district court and of the Court of Appeal herein be amended so as to decree that the dation en paiement made by Oscar Lemoine to Mrs. Mamie C. Voorhies, his wife, on October 7, 1908, be set aside, as to the open accounts therein transferred, in so far as the rights of the plaintiff and intervener are concerned, and also be set aside as to the merchandise identified by the plaintiff herein, amounting to $689.27, whereof a list is attached to and forms a part of the inventory made by E. A. Plauché, notary public, on December 11, 1908, in so far as the rights of the plaintiff in this suit are concerned; and it is further ordered that said judgments be affirmed in all other respects, and that the defendants pay costs in all courts.

-----

(56 South. 339.)

No. 18,479.

THIBODAUX et al. v. BARROW et al.

(June 15, 1911. Rehearing Denied Oct. 16, 1911.)

*(Syllabus by Editorial Staff.)*

1. EXECUTORS AND ADMINISTRATORS (§ 380*) — SUCCESSION SALES — IRREGULARITIES — PRESCRIPTION.

Under Civ. Code, art. 3543, declaring that all formalities connected with any public sale, made by one authorized to sell, shall be prescribed after the lapse of five years, objections to a succession sale to pay debts, pursuant to an order of the court, on the grounds that no tutor was appointed for the minor heirs who were unrepresented at the making of the inventory, that the inventory was not taken within the time prescribed by law, that the property was inventoried at less than its value, and that no list of the debts of the succession was furnished as a foundation of the order of sale, etc., are unavailable after the lapse of five years after the sale.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1545–1568; Dec. Dig. § 380.*]

2. EXECUTORS AND ADMINISTRATORS (§ 388*) — SUCCESSION SALE — RIGHTS OF PURCHASERS.

A purchaser at a succession sale is protected, in the absence of fraud, by the decree of court vested with jurisdiction, directing a sale to pay the debts of the succession, and his title is not open to subsequent attack by minor heirs alleging that the succession owed no debts, and that an administration was unnecessary.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1573–1582; Dec. Dig. § 388.*]

3. EXECUTORS AND ADMINISTRATORS (§ 388*) — SUCCESSION SALE—TITLE OF PURCHASER.

A succession sale pursuant to order of court, directing a sale to pay succession debts, was attacked 17 years afterwards by the heirs who alleged the absence of any order appointing an administrator. The deputy clerk in charge of the office at the time of the sale testified that he did not remember whether an order appointing an administrator was made, and that he would infer that it was not made from the fact that his record book did not show the inscription of it, and that his fee book did not show any charge made in connection with it. Prior to the sale a person qualified as administrator, and then presented his petition for sale. *Held*, that the purchaser, acting in good faith, acquired a good title as against the heirs.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1573–1582; Dec. Dig. § 388.*]

4. EXECUTORS AND ADMINISTRATORS (§ 380*) — SUCCESSION SALES — SETTING ASIDE — GROUNDS—EXISTENCE OF MINORS.

The existence of minor heirs does not invalidate a sale of succession property to pay debts, and where the purchaser prior to the sale had the title examined, and the absence from the record of a formal order appointing the administrator did not attract the attention of the attorneys who examined the title, the mere fact that he knew of the existence of the heirs did not show bad faith justifying the setting aside of the sale.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1545–1568; Dec. Dig. § 380.*]

5. EXECUTORS AND ADMINISTRATORS (§ 388*) — SUCCESSION SALES—VALIDITY—EXISTENCE OF MINORS.

A sale of succession property made to pay debts pursuant to order of the court is not invalid merely because the order for the sale was obtained less than 30 days after the appoint-

ment of the administrator; and where the record showed that the property belonged to the succession, which was so indebted that a sale was necessary, the purchaser could rely on the decree of sale entered by a court having jurisdiction.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1573–1588; Dec. Dig. § 388.*].

6. EXECUTORS AND ADMINISTRATORS (§ 341*) —SUCCESSION SALES—FILING OF LIST OF DEBTS.

The filing of a list of the debts, for the payment of which succession property is to be ordered sold, is required only in case the order for the sale is to be made by the clerk or his chief deputy, and not by the judge himself.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 341.*]

Appeal from Twenty-First Judicial District Court, Parish of Pointe Coupée; Calvin K. Schwing, Judge.

Action by Mrs. Mary I. Thibodaux and others against Bennett L. Barrow and another. From a judgment for defendants, plaintiffs appeal. Affirmed.

William C. Carruth, for appellants. Albin Provosty and Hewés & Smith, for appellees.

PROVOSTY, J. The mother of the plaintiffs died in August, 1891. In February, 1892, their father, B. L. Barrow, filed a petition, alleging that the succession of his deceased wife owed debts, that an administration was necessary, that the property was all community property and consisted mainly of the Preston plantation, and asking that an inventory be made, and that he be appointed administrator, and the court ordered the inventory to be made, and notice of the application for administration to be published. The inventory was duly made, and footed $7,400, whereof $6,000 was the appraised value of the Preston plantation. Whether any regular order was ever made appointing Mr. Barrow administrator is one of the questions, indeed the main question, in the present controversy. The only documentary or record evidence of the appointment having been made is the following:

"State of Louisiana, Parish of Pointe Coupée. "To all men to whom these presents shall come, greeting:

"Whereas, Bennett L. Barrow has been duly and legally appointed administrator of the succession of Mrs. I. Barrow, deceased, and has taken the oath required by law.

"Now these presents are to make it known that the said Bennett L. Barrow is authorized and empowered to administer upon said succession and to do and perform as administrator aforesaid, and for the interest of the said succession all the duties imposed on him by law.

"Witness, The Hon. Robt. Semple Judge of the Fifteenth Judicial District Court, this 28th day of March, 1892.            A. L. Jewell,
                                                  "Dy. Clerk."

On this same date, March 28, 1892, Mr. Barrow qualified as administrator by taking oath and furnishing bond. Two days later, in his quality of administrator, he presented a petition alleging that the succession was "largely in debt," and that the sale of all of its property was necessary to pay these debts, and asking that the sale be ordered; and, on this petition the district judge made an order that all the property of the succession "be sold for cash to pay debts." A commission issued regularly to the sheriff to make the sale, and, after due advertisements, the sale was made on May 4, 1892, and the Preston plantation was adjudicated to Mr. Barrow himself for $6,000, the inventory appraised value. Some two years later, in September, 1896, Barrow sold the plantation to the defendant Harrell. The present suit was filed in January, 1909. The plaintiffs, four in number, claim as heirs of their mother, Mrs. Barrow, deceased, and of their sister, who died after their mother. They ask that the said succession sale of the Preston plantation be decreed to be a nullity as to their interest therein, consisting of nineteen-fortieths thereof, and that they be decreed to be the owners thereof in the said proportion. Their grounds of nullity are, first, that their father was never appointed administrator of the succession of their mother, and that consequently the property of the succession never came into the cus-

tody, or under the jurisdiction, of the court, and hence that the court was without jurisdiction to make the order for its sale, and the sale is therefore null; secondly, that, even if their father was appointed administrator, the said order for the sale of said property and the sale of said property are null, because made within less than 30 days after the appointment of an administrator, in violation of article 1164, C. C., a prohibitory law.

[1] Other grounds of nullity are alleged in the petition, but are not pressed, doubtless because, even if originally meritorious, they would be cured by the prescription of five years pleaded by the defendant. Article 3543, C. C.; Munholland v. Scott, 33 La. Ann. 1043; Webb v. Keller, 39 La. Ann. 55, 1 South. 423. They are that no tutor was appointed to the minors, and they were unrepresented at the making of the inventory; that the inventory was not taken within the time prescribed by law; that the property was inventoried at less than its value; that no list of the debts of the succession was furnished as a foundation for the order of sale; and that no appraisement, other than that of the inventory, preceded the sale.

[2] The defendant Harrell naturally relies upon the protection afforded to purchasers in good faith by an order of court recognizing the necessity of the sale of succession property and ordering the sale to be made.

In the case of Granger v. Hebert, 121 La. 1050, 46 South. 1012, this court said:

"Whether, therefore, upon the showing made, it was proper to appoint an administrator, and whether, upon the petition presented, it was proper to order the sale of the land in question as the property of the succession, were questions which the judge of that court was there to decide, which no one but he could decide, and the determination of which necessarily preceded the making of the order under which the sale was made.

"The court had jurisdiction, and its decree protects the purchaser in the absence of fraud alleged and proved. He is bound to ascertain that the judge had jurisdiction, and, finding that he had, the truth of the record in other respects may be assumed. Where the court is vested with jurisdiction, its order, * * * directing that the property be sold to pay debts, is so far conclusive as to protect the title of the adjudicatee who purchases in good faith from subsequent attack by minor heirs, alleging that the succession owed no debts, and that an administration was unnecessary."

In the case of Webb v. Keller, 39 La. Ann. 55, 1 South. 423, the same principle is announced as follows:

"The purchaser at a sale made at public auction under an order made by a judge having jurisdiction of the succession is not bound to look beyond such decree to ascertain its necessity. He is bound only to ascertain that the judge had jurisdiction, and, finding that he had, the truth of the record in other respects may be assumed. Informalities in * * * the composition of a family meeting recommending a sale of succession property to pay the ancestor's debts, and in which minors have a residuary interest, etc., are prescribed by five years." R. C. 3543.

In the case of Irwin v. Flynn, 110 La. 830, 34 South. 794, the property of the community was acquired by the surviving husband, at a sale provoked by himself, in his capacity of administrator of the succession of his deceased wife. Thereafter Leon Irwin, to whom the property had been mortgaged by this purchaser, foreclosed upon it, and one of the heirs, a daughter, intervened, claiming the proceeds, on the ground that the sale at which her father had acquired the property was a nullity, and that the title was still in the succession of her mother. A number of illegalities were alleged. This court said:

"However true this may be, the third person, Irwin, the mortgagee, who was absolutely without notice, who knew nothing of the devious ways that had been followed in order to conceal the true character of the transaction, can scarcely be held accountable, and his rights based upon the faith to be placed in public records be taken from him. * * * The purchaser is not bound to look beyond the decree of a court of competent authority recognizing the necessity of the sale."

In Nesom v. Weis, 34 La. Ann. 1010, this court said:

"It is now no longer an open question that a purchaser at a sale made under an order of a probate court, which is a judicial sale, is not bound to look beyond the decree recognizing its

necessity. He must look to the jurisdiction of the court; but the truth of the record concerning matters within its jurisdiction cannot be disputed."

In Webb v. Keller, 26 La. Ann. 596, there were informalities and illegalities in the proceedings antecedent to the order for the sale. The property had been bought by the executrix and subsequently mortgaged. Suit was brought by the heirs to set aside the sale. The court said:

"To set aside the sale made under the authority of justice, and thus destroy the mortgage which was taken as the result thereof, and which was accepted in good faith, would be to make like proceedings snares instead of shields. * * * Those who acted in good faith, and whose acts were based upon the orders of a court of competent jurisdiction should not be made to suffer."

In fact, the doctrine of these cases is so well settled that citation of authority would seem to be unnecessary in support of it. Hennen, Dig. p. 1494, No. 5; Cross on Successions, par. 254, pp. 399, 400, 401.

[3] The plaintiffs' learned counsel contends, however, that the said doctrine does not apply to the present case, because, in the absence of an order appointing an administrator, the court is without jurisdiction. How far that proposition is well founded need not be gone into under the circumstances of the present case. The suit is brought 17 years after the sale, when no one can remember positively whether or not an order of appointment was made, and when such an order, if made, may have been misplaced or lost. True, the deputy clerk, in charge of the office at that time, testified that he does not remember whether such an order was made, and that he would infer that it was not made from the fact that his record book does not show the inscription of it and his fee book does not show any charge made in connection with it; but such evidence as this is not conclusive.

"If the legality of titles acquired under judicial sales within the last 40 years were to be tested by the record in existence at a subsequent period, time, instead of healing the defects of such titles, would gradually weaken, and eventually destroy, them. In such cases the presumption omnia rite acta may well be invoked and applied." Gibson v. Foster, 2 La. Ann. 503; Fontenot v. Her Husband, 2 La. Ann. 780; Gentile v. Foley, 3 La. Ann. 146; Roberts v. Zansler, 34 La. Ann. 205.

In the case of Heirs of Ford v. Mills & Phillips, 46 La. Ann. 336, 14 South. 846, this court said:

"They allege that Dean was neither a creditor of the succession of Ford, nor a relative or connection of the family; that he had no right to be appointed administrator; that the original order touching the appointment, signed by the district clerk, was null and void, as it was a conditional order of appointment, and the subsequent order signed by the deputy clerk was also an absolute nullity, as he was without power or authority to appoint or confirm an administrator. They allege that the order of sale was granted within three months of the appointment of the administrator in violation of article 1164, Revised Civil Code; that there was no necessity for the sale of immovable property; that no creditor applied for a sale, and Dean never filed a statement of debts. * * *

"We are of the opinion that plaintiffs' objection in so far as they seek to base the nullity of the transfer of the property to the Jemisons upon the ground that Dean was not the administrator of the succession for the reason that he was neither a creditor nor a relative or connection of any Ford family, and that there is not in the record any evidence of a direct order of the district clerk himself appointing him as such, but simply a paper from which it would appear that Dean's appointment rested upon the unauthorized act of a deputy clerk, cannot be inquired into in the collateral manner attempted. The order of sale was granted by the district clerk upon a petition addressed to the court by Dean as administrator,' and he was at least a de facto officer. We presume, besides, that there must have been some intermediate order between the original one of the district clerk and the later one of his deputy. We think the paper signed by the latter was intended to be merely the 'letters of administration' which issue to an administrator after he has complied with the law."

In the cases cited by the learned counsel for plaintiffs, the contests were over the appointment of the succession representative, or were direct suits to set aside the appointment. Thus Succession of Gusman, 35 La. Ann. 405, involved an opposition to, and contest over, the appointment of an administrator; and the question was whether an

appointment made without publication of the 10 days notice required by articles 1115 and 1116, C. C., and article 967, C. P., was valid; and the court held that it was not. So in Pfarr & Kullman v. Belmont, 39 La. Ann. 298, 1 South. 681, the contest was over the control of the succession property and the court held that the appointment of a succession representative without previous publication of the 10 days notice required by law was irregular and null. So in Succession of Picard, 33 La. Ann. 1135, the widow had qualified as administratrix without any order appointing her, and no letters of administration had issued to her, and the question was whether under these circumstances the beneficiary heir was still in time to claim the administration. The court held that he was, for the reason that there had been no order of appointment as administratrix, and that such order was essential. Again, in Wirt v. Pintard, 40 La. Ann. 233, 4 South. 14, the contest was over the administration. The suit was brought to annul the letters of administration, on the ground that they had issued without an order of court. And so, likewise, in Miguez v. Delcambre, 113 La. 61, 36 South. 888. In all these cases the question was not squarely presented, as in this case and in the case of Succession of Landers, 126 La. 371, 52 South. 545, hereinafter cited, whether a document signed by the clerk or the chief deputy clerk declaring that such a person has been duly and legally appointed administrator and is authorized and empowered to administer is not itself an appointment, considering that the clerk or his chief deputy had the power to make the appointment. True, in Succession of Picard, 33 La. Ann. 1135, supra, it was argued to the court that "an enabling order from the clerk is not necessary to authorize him to perform the duties he is authorized by law to perform," and the court held that such order was necessary; but in that case no letters of administration tantamount to an express appointment by the clerk had been issued, and the court was not called upon to decide whether the recitals made by the clerk himself in such letters, to the effect that the person had been duly and legally appointed administrator, and is hereby authorized and empowered to administer, do not in themselves constitute an appointment, in view of the fact that the clerk is vested by law with the same authority as the judge to make the appointment.

The latter question was squarely presented in the recent case of Succession of Landers, 126 La. 371, 52 South. 545, and after mature consideration by this court was decided in the affirmative, and we discover no necessity for reopening it in the present case.

The legal situation was entirely different at the time this court made the early decisions upon which the later decisions cited by plaintiffs were founded. The clerk had then no power to make the appointment, and, of course, a document signed by him to the effect hereinabove stated was the mere clerical recital of what the court had, or was supposed to have, done; and could not possibly be allowed to operate as being in itself a conferring of authority. And, moreover, there is quite a difference between a case where the contest is over the appointment of the succession representative, and a case like the present, where the appointment, such as it was, has been made, and has been by everybody accepted as valid, and the officer has acted, and has been an officer de facto, if not, in technical strictness, de jure, and the rights of third parties relying in good faith upon the acts of the court have become involved, and, after the lapse of years, are sought to be divested.

[4] Plaintiffs do not admit that the defendant Harrell acquired the property in good faith; on the contrary, they contend that he did so in legal, if not in actual, bad faith.

They seek to deduce this legal bad faith from the fact that Harrell lived on the plantation adjoining the Preston plantation, where Mr. Barrow and his children lived, and knew of the existence of the plaintiffs and of their minority, and of their being part owners of said property as heirs of their mother, and that the record shows that, before making the purchase, Harrell caused the record to be examined by his attorneys.

We fail to find in these circumstances any evidence of bad faith. Having the title examined would tend to show good faith. The existence of minor heirs does not invalidate a sale of succession property made to pay debts; and for believing that there were debts, and that the sale was being made to pay them, Harrell had the perfect right to rely upon the action of the court in so finding, and ordering the sale on that hypothesis. Nothing shows that the fact of the absence from the record of a formal order appointing the administrator attracted the attention of the attorneys who examined the title for Harrell. The Middlesex Banking Company had already made a loan upon the property predicated on the title being perfect; and the extreme care of these loan companies in making sure of the validity of the title to the property upon which they make loans is well known.

[5] As to the other ground of nullity, namely, that the order for the sale of the property was obtained less than thirty days after the appointment of the administrator, it is met by the very decision of Michel v. Michel, Curator, 11 La. 149, cited by plaintiff's learned counsel, where the court said:

"But he [the curator] was appointed more than 30 days before the order for the sale was given, although not qualified to act until the very day his petition was presented. The only reason assigned by the Code for this delay is that the curator may inform himself concerning the debts of the estate and the necessity for selling. It is not pretended that the curator was mistaken as to the amount of the debts and the necessity of a sale. We are of opinion

that, as relates to the purchaser of the property, this does not render the sale null."

Numerous other decisions to the same effect could be cited. It is too well settled for argument that purchasers at probate sales do not have to look beyond the jurisdiction of the court and the decree itself ordering the sale.

The distinction between the present case and that of Succession of Dumestre, confidently relied upon by the learned counsel for plaintiffs, is that in that case the record showed on its face that the property there in question belonged to minors, and that, therefore, the court was without power to order its sale otherwise than by observance of the formalities prescribed by the law for the sale of the property of minors; whereas, in the instant case, the property, so far as appears from the record, belonged to a succession so indebted that the sale of all of its property was necessary to pay its debts. [6] True, no list of these debts had been filed, but the filing of a list of the debts for the payment of which succession property is to be ordered to be sold is required by law only in case the order for the sale of the property is to be made by the clerk, or his chief deputy, whereas the order in question in this case was made by the judge himself.

Judgment affirmed.