**UNITED STATES v. 524.72 ACRES OF
LAND IN WEBSTER PARISH, LA.,
et al.**

No. 2934.

District Court, W. D. Louisiana, Shreveport
Division.

June 10, 1940.

L. F. Grigsby and A. B. Parker, both of Minden, La., for Jones heirs.

A. S. Drew, of Minden, La., for defendant T. A. Glass.

PORTERIE, District Judge.

The tract of land involved in this litigation was expropriated by the United States in May, 1938, from the record owner, T. A. Glass, and, at the same time, the heirs of Thomas J. Jones were cited by the United States to appear in the proceedings.

After the judgment was taken by the United States, but before distribution of the funds, the heirs of Thomas Jones and Della Jones, his wife, filed a petition of intervention, claiming the proceeds, on the ground that they are legally the owners. They offer alleged weakness in a certain tutorship proceeding, followed by a supposed weakness in an authority for the natural tutrix, the surviving wife, Della Jones, to borrow money from the First National Bank of Minden; then, irregularities are urged against the validity of the foreclosure proceeding by the bank on the mortgage securing the loan; and, additionally, they allege that the bank, purchaser at the public sale, did not acquire good title; and, finally, bring out that Mr. T. A. Glass, purchaser from the bank, by notarial act, had knowledge, directly or indirectly, of the infirmities, and therefore they plead that he is not a purchaser in good faith upon the face of the records.

The intervention was answered by Glass, denying all allegations which would tend to show any ownership in the Jones heirs, and concluding, in the alternative, with the pleas of prescription of two, five and ten years.

From the petition in intervention by the Jones heirs the following three specific attacks are made on the title of Glass:

(a) The family meeting authorizing the loan by the natural tutrix for the benefit of the minor children had the following provision: · "The debt to be in the form of a note to bear 8% interest from its date and due twelve months after date with 10% attorney's fees, if collected, with legal process, and the minors' interest in the property to be mortgaged to secure same, together with all the interest of their mother· and brother and sisters, who are the major heirs; and further recommend that if it becomes necessary at the maturity of the note to secure an extension by a renewal of the mortgage, the same may be done."

From this language the bank had the authority to make a loan secured by mortgage, but not one containing a confession of judgment, the right to executory process, waiver of homestead, and sale without appraisement.

(b) The language "and further recommended that if it becomes necessary at the maturity of the note to secure an extension by a renewal of the mortgage, the same may be done" prohibited the bank to foreclose as it did; that the bank was compelled to renew the loan.

(c) The foreclosure proceeding by the bank, and the purchase at public sale by the bank, are null and void because the alleged infirmities under (a) and (b) were known to the bank.

It is mutually admitted that the law of Louisiana permits the appointment of the mother as the natural tutrix of her minor children. Both sides agree on the law enabling the natural tutrix to borrow, binding the property of the minors, to pay debts of the succession, thus preventing · the immediate loss of the property to pay the debts. See Article 339 et seq., Civil Code of Louisiana.

At the time of mortgage, the major children joined in the mortgage as owners in indivision. Obviously, they had the same interest as all the others to try to save the property, and their joining in the mortgage is the expression of it.

The main objection is that the provisions of the family meeting, quoted under (a), made a part of the judicial authority, do not permit a mortgage to secure the payment of the note to contain the pact de non alienando, to import a confession of judgment, to give the right to executory process, to prescribe a waiver of homestead, and to provide for sale without the benefit of appraisement.

Our view is that the language used authorizes a loan; the conditions necessary to secure the loan are implied.

We find that the property had not sufficient worth to support a loan of $2,700 without waiver of the homestead. The property at public sale brought in a bid

only in the amount of the loan, and that made by the bank. There may have been other bids, but they were lower. The district judge, the widow, the major children, and the bank, could not conceive of a loan in the sum of $2,700 to be safely secured by the property involved without a waiver of the homestead. The homestead exemption in Louisiana is $2,000.

The language is "and the minors' interest in the property to be mortgaged to secure same, together with all the interest of their mother and brother and sisters, who are the major heirs." This meant a mortgage with its incidental conditions to be reached by agreement between the parties. The mother as natural tutrix for the minors and for herself, individually, the major children for themselves, are on the one hand, and the money-lending bank is on the other hand. She was authorized to borrow, giving a mortgage on the property for security. The mortgage was made to import a confession of judgment, to include the waiver of homestead, as well as the waiver of the benefit of appraisement, because the bank would not make the loan otherwise. The natural tutrix was authorized to grant or withhold these conditions in the broad exercise of her discretion. She was not forced to accept them. The law presupposes she acted to the best interests of her children.

All the above conditions are the usual and customary provisions of loans made in Louisiana secured by mortgage on rural real estate. Though apparently drastic, they insure prompt collection, and, obviously, enable one to get the accommodation and at a more favorable rate of interest.

■ It is further contended that under the language "and further recommended that if it becomes necessary at the maturity of the note to secure an extension by a renewal of the mortgage, the same may be done", there should have been an extension of the note at maturity. The maturity was March 28, 1923, foreclosure was not before January 22, 1925, and sale followed on April 25, 1925. This was an extension by the bank of the loan from date due of twenty-two months. If the language be considered mandatory, the bank did fulfill its requirement.

The court thinks, however, that the language means merely that the tutrix was authorized to extend the note at maturity, without the necessity of further court authorization, if she found the bank willing.

The action of a local bank in making a loan of money to a widow, individually, and also to her as natural tutrix of her minor children, qualified as such by court decree, is usually impressed with good faith. Loans of this type are not sought; they are made generally because there rests upon the bank a sense of civic obligation as a quasi-public institution. No bank to make collection cares to foreclose upon a widow and her minor children.

There must be removed as a possible background to this case any idea that Mrs. Della Jones and her children failed to get value when they mortgaged their property. She received, for herself and children, $2,700 in cash from the bank. She used this money two years and ten months before the property mortgaged was sold for the debt. Interest was paid by her only to October, 1923; the maturity of the note was March 28, 1923. No fraud is alleged; the plaintiff's case is pitched upon mere informalities and want of purportedly essential legal forms.

■ Much is made by the Jones heirs of the fact that Mrs. Della Jones executed a quit-claim deed to T. A. Glass, on April 25, 1925, of "whatever interest she might have had." They press the fact as proof that Glass felt he had an incomplete or legally insufficient title.

We find that the full and complete title is now in Mr. Glass. This is the result of our examination of the record. Here is what happened: Mrs. Jones, in giving mortgage to the bank, bound her half of the community property when she signed individually; and by recommendation of the family meeting, approved by court decree, she bound the interest of all the minors (none is left out of the proceedings) when she signed as natural tutrix. There were then living three major heirs, in the following order of age: Mattie, William and Edna. From the agreed stipulation, wherein the certified copy of the mortgage by the tutrix and the major heirs to the bank is found, we note that William and Edna joined in the mortgage and bound themselves as major heirs, but the oldest child, Mattie, does not appear. This explains why, subsequently, on April 23, 1925, Mattie, then married to Clay Parmer, conveyed to her mother, Mrs. Della Jones, and then, two days later, April 25, Mrs. Della Jones conveyed to T. A. Glass, thus placing, as we have stated at the beginning of the paragraph, the full and complete

title in Glass. April 25, also, is the day Glass acquired from the bank. The inference to be made from these two quitclaim deeds, since the consideration is only $1 "and other valuable consideration", is that Mattie Parmer, the oldest child, and Mrs. Jones, the mother, were ratifying the transaction had with the bank, because they knew they had received the money in good faith and that the property at time of foreclosure was not worth more than the money borrowed.

Banks are not desirous of carrying real estate; they prefer ready liquid assets. Foreclosure on real estate is deferred often until a prospective buyer is located. The fact that Glass bought so soon from the bank after it had acquired title would indicate he was a buyer in the immediate offing before the foreclosure was begun. It is no indication of bad faith.

A particular little sin is presented in that the sheriff, in making his proces verbal, described one of the tracts as N ½ of SW ¼ of SE ¼ when it should have been, and is really, N ½ of SW ¼ of NE ¼. It is "NE ¼" in the mortgage to the bank, in the return of the writ by the sheriff himself, and, also, in all the other numerous deeds where the tract is described. The mistake is typographical purely. The sheriff is presumed to have conveyed, as a public officer, that which he adjudicated.

From the evidence generally, oral and documentary, the court is left without doubt but that Glass was a third party, purchaser for value, in good faith, upon the face of the records. There is nothing serious at law even back of the record, as we believe we have shown already. The Jones heirs bring out mere legal peccadilloes; these are without real legal substance.

The court, therefore, finds that the contentions of intervenors fall because not supported by proof upon trial.

The trial court is subject to reversal on appeal; because of that contingency, we should dispose of the prescription pleaded by Glass.

The prescription of two and five years is pleaded under Article 3543 and of ten years under Articles 3478, 3479 of the Civil Code of Louisiana.

We quote Article 3543 in full: "Any and all informalities of legal procedure connected with or growing out of any sale at public auction of real or personal property made by any sheriff of the parishes of this State, licensed auctioneer, or other persons, authorized by an order of the courts of this State, to sell at public auction, shall be prescribed against by those claiming under such sale after the lapse of two years from the time of making said sale, except where minors or interdicted persons were part owners at the time of making it, and in the event of such part ownership by said minors or interdicted persons, the prescription thereon shall accrue after five years from the date of public adjudication thereof."

This prescription cures, in our opinion, the following informalities of legal procedure urged by intervenor: (a) the proof of death of Jones was not in the best legal form in the tutorship proceedings, as there were no supporting affidavits; (b) Mrs. Jones did not sign the tutorship documents, the notation being made that she had an injured hand and did not sign; (c) no notices were served on or sent to the members to compose the family meeting and no waiver of notice by them appears; (d) all of the tutorship proceedings, including the family meeting, inventory and appraisement of succession assets, family meeting to approve and recommend the loan, authorization and approval for loan by the judge, and the drafting of the act of mortgage, all occurred on one date, March 28, 1922.

We consider the above informalities "connected with or growing out of the sale at public auction made by the sheriff", even though they be anterior in time to the date of actual foreclosure proceeding and the public sale. If they do not so classify, they are eighteen years old now and are precluded clearly by the prescription of ten years under Articles 3478 and 3479, next to be discussed.

The following cases illustrate, in variety, the informalities which have been held by the Supreme Court of Louisiana to be covered by Article 3543: Morris et al. v. Foster et al., 192 La. 996, 189 So. 601; Abbott v. Pratt, 144 La. 741, 81 So. 296; Arceneaux v. Cormier, 175 La. 941, 144 So. 722; Ring v. Schilkoffsky, 158 La. 361, 104 So. 115; Bryson v. Lee, 181 La. 1019, 160 So. 797; Thibodaux v. Barrow, 129 La. 395, 56 So. 339.

We now quote Articles 3478, 3479, in full:

(3478) "He who acquires an immovable in good faith and by just title prescribes for

it in ten years. This prescription shall run against interdicts, married women, absentees and all others now excepted by law; and as to minors this prescription shall accrue and apply in twenty-two years from the date of the birth of said minor; provided that this prescription once it has begun to run against a party shall not be interrupted in favor of any minor heirs of said party."

(3479) "To acquire the ownership of immovables by the species of prescription which forms the subject of the present paragraph, four conditions must concur:

"1. Good faith on the part of the possessor.

"2. A title which shall be legal, and sufficient to transfer the property.

"3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.

"4. And finally an object which may be acquired by prescription."

1. Good Faith. 2. Legal Title—Translative of Property.

Glass bought upon the face of the records showing full tutorship proceedings, with all incidents required by law fulfilled, approved and confirmed by decree of the court. There appeared of record, further, the mortgage by the mother and minors to the bank. The foreclosure proceedings by suit were of record, and, particularly, the return of the writ showing the disposition of the proceeds of the sale under the executory process. In the alienation records, too, was the procès verbal by the sheriff attesting to the adjudication of the property to the bank. A reputable attorney advised favorably as to good title. Glass paid cash for the property—apparently a fair value. All legal forms were regular; the deed to him was by authentic title, fully translative of ownership to real estate in Louisiana. Mr. Glass had every reason to believe he was buying from the true owner. Civil Code, Article 3484. No one, neither the widow, then living, nor any of the major children, took steps to prevent the foreclosure by the bank. The objections sought to be urged now were known then.

No party in this suit ever interviewed Glass about the title for over ten years. When there arose the possiblity of oil and minerals under the land, in 1936, ten years after his purchase, one of the children, Mrs. Hobbs, talked to Mr. Glass about a cloud on his title. She testified to have come to Webster parish from Oklahoma on a visit, about five years after Glass had acquired, at which time she visited Mr. Glass at his store and talked to him about the title to the property not being good. The court was not impressed by the evidence of Mrs. Hobbs at all. Granting the visit was made and the conversation had, it is not an act to interrupt the running of prescription or to prevent the present plea of prescription.

3. Possession.

Glass took immediate possession of the property, renting it for farming purposes uninterruptedly from the date of purchase to the filing of suit—a period of fourteen years. Every year, the rents were collected by him and the taxes were paid by him. Further exercise of possession is shown by Mr. Glass in that he executed several mineral leases upon the property, and also sold pine timber off the property, as shown by excerpts from the abstract filed in the case.

4. Finally, real estate is "an object which may be acquired by prescription."

So, even if there be infirmities, none of which is found, the plea of prescription of ten years, as just disclosed and analyzed, must be maintained.

The court, therefore, will sign a judgment ordering payment of the money held by the United States government to Mr. T. A. Glass.