ROSENDA, EVA MATILDE SIRIA, MARÍA DE LA PAZ VALENTINA, CARLOS JORGE EDUARDO y ANGEL ALBERTO CARLOS BURCK-HART SANZ, demandantes y apelantes, *v.* JOSÉ ZEDA MAR-TÍNEZ, representado por su tutor, don SEGUNDO ZEDA MAR-TÍNEZ, demandado y apelado.

Núm. 9019.—*Sometido:* Diciembre 12, 1944. *Resuelto:* Mayo 9, 1945.

*Pedro E. Anglade,* abogado de los apelantes; *Luis Mercader* y *J. Cór-dova Rivera,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Los apelantes heredaron de su madre una finca urbana. Siendo menores todavía[1] y estando bajo la patria potestad de su padre, éste solicitó de la corte de distrito autoridad para hacer un préstamo de $5,000 a nombre de los menores, otorgando en garantía del mismo, una hipoteca sobre la referida finca. La solicitud manifestaba que la finca estaba sujeta a dos hipotecas de $1,000 y $917.20, que se habían

---

[1] Con la excepción de Rosenda Burckhart Sanz que para esa época ya era mayor de edad.

otorgado con la correspondiente autorización judicial; que se habían radicado ya las demandas para ejecutar estas hipotecas; que este préstamo era necesario para pagar estas deudas hipotecarias o de lo contrario la finca aquí envuelta, valorada en $15,000, sería vendida en pública subasta; que el préstamo también era necesario para hacer reparaciones a la propiedad, pagar contribuciones vencidas y hacer frente a otras necesidades urgentes de los menores.

El hijo que había llegado a la mayoridad dió su conformidad a la transacción. La corte de distrito celebró una vista en cuanto a la necesidad y conveniencia de dicho préstamo. El fiscal manifestó que no tenía oposición al préstamo. Por resolución de julio 31 de 1931 la corte de distrito concedió el permiso para hacer el préstamo y la hipoteca.

Este caso tiene el aspecto especial de que el dinero se tomó a préstamo del tutor de un veterano demente, cuyos asuntos también eran administrados por la misma corte de distrito. El tutor, quien era el padre del veterano, solicitó permiso para hacer el préstamo aquí envuelto. Manifestaba que la ley Federal lo obligaba a invertir provechosamente el dinero de su hijo; que el interés pagado por los bancos sobre los depósitos era bajo; y que creía que este préstamo era una buena inversión. Mencionaba en su moción las cargas existentes, los pleitos de ejecución pendientes y la parte dispositiva de la resolución de la corte, del 31 de julio de 1931, autorizando al padre de los apelantes a hacer el préstamo. Expresamente decía en su moción que el préstamo se iba a hacer al 1 por ciento mensual, "con todas las condiciones propias e inherentes a esta clase de negocios". La resolución de la corte declarando con lugar la moción repetía estos términos y condiciones.

Por escritura pública otorgada el 30 de octubre de 1931 se consumó la transacción de préstamo e hipoteca entre el padre de los menores y el tutor del veterano. Las partes

dispositivas de las antedichas resoluciones de la corte se incorporaron y se hicieron parte de este documento.([2]) También disponía que "El rédito anual será el doce por ciento pagadero por mensualidades vencidas; pero si al vencer tres meses consecutivos no se satisficiere el interés correspondiente a los mismos, por este sólo hecho se entenderá vencida toda la obligación, quedando facultado el acreedor a reclamar todo el capital e intereses devengados".

En vista del hecho de que los deudores hipotecarios dejaron de pagar las mensualidades de intereses durante los últimos nueve meses, el 3 de febrero de 1933, el acreedor hipotecario—el veterano demente, representado por su tutor—radicó un procedimiento ejecutivo sumario en el que reclamaba el principal de $5,000, intereses en la suma de $450 y $500 para costas, gastos y honorarios de abogado según lo dispuesto en la hipoteca. La finca se adjudicó al acreedor hipotecario en subasta pública celebrada el 31 de agosto de 1933, por la suma de $6,200, que era lo que se le adeudaba al acreedor.

Al llegar a su mayoría los apelantes,([3]) entablaron el presente pleito, solicitando la nulidad del procedimiento ejecutivo sumario y otros remedios. Después de un juicio en los méritos, la corte de distrito dictó sentencia desestimando la demanda. Esta es una apelación contra dicha sentencia.

■■ La única contención de los apelantes que exige consideración aquí, es que el padre de los menores se excedió en la autorización concedídale por la resolución de la corte del 31 de julio de 1931, que permitía el otorgamiento de la escritura de hipoteca, a tal extremo que es nuestra obligación anular la ejecución sumaria de la misma. Las cláusulas de la escritura de hipoteca atacadas específicamente son aquéllas que disponen (1) intereses al 12 por ciento, más

---

([2])Además, las hipotecas anteriores pendientes se cancelaron debidamente en esta misma escritura.

([3])Los apelantes también incluyen a Rosenda Burckhart Sanz quien, como hemos visto, era mayor de edad cuando ocurrieron todos estos hechos.

una cláusula de vencimiento anticipado por falta de pago; (2) la tasación de la finca por las partes contratantes en la suma de $10,000 de conformidad con el artículo 127 de la Ley Hipotecaria, según fué enmendado por la Ley número 69, Leyes de Puerto Rico, 1931 (pág. 433); (3) el pago de $500 para costas, gastos y honorarios de abogado en caso de procedimientos judiciales en ejecución.(⁴)

En el caso de *United States* v. *524.72 Acres of Land,* 33 F. Supp. 474 (Dist. Ct. La., 1940) los Estados Unidos expropiaron cierta parcela de terreno incluyendo como un demandado al dueño que aparecía del registro. La Sucesión de un tal Jones intervino, alegando que ellos eran los dueños. Entre otras cosas alegaron, como aquí, que una madre con patria potestad se había excedido en su autoridad al otorgar una hipoteca en garantía de un préstamo hecho para beneficio de sus hijos menores. Al resolver esta contención, la corte de distrito empleó el siguiente lenguaje (págs. 465–6):

"La objeción principal es que las disposiciones del consejo de familia, citadas bajo el apartado (*a*) y que forman parte de la autorización judicial, no permiten que una hipoteca para garantizar el pago de un pagaré, contenga el pacto de *non alienando;* que contenga la confesión de sentencia; que otorgue el derecho de procedimiento ejecutorio; que prescriba una renuncia de hogar seguro; y que disponga la venta sin el beneficio de tasación.

"Nuestra conclusión es que el lenguaje empleado autoriza el préstamo; implicándose las condiciones necesarias para garantizarlo.

"      .   .   .   .   .   .   .   .   .   .

"El lenguaje es 'y el interés de los menores en la finca a ser hipotecada para garantizar el préstamo, junto a todos los intereses de su madre, hermano y hermanas, quienes son los herederos mayores'. Esto significaba que por convenio de las partes se llegaba a una hipoteca con sus condiciones incidentales. La madre, como tutora natural de sus menores y de ella misma, individualmente, y los hijos

(⁴)No consideramos ciertos argumentos rechazados por la corte inferior y no renovados aquí. Tampoco consideramos contenciones hechas en apelación por primera vez.

mayores por sí mismos, están a un lado, y del otro lado está el banco que presta el dinero. Estaba autorizada para tomar dinero a préstamo otorgando como garantía una hipoteca sobre los bienes. La hipoteca se hizo para que conllevara una confesión de sentencia, e incluyera la renuncia de hogar seguro, así como la renuncia del beneficio de tasación, porque de lo contrario el banco no concedía el préstamo. La tutora natural estaba autorizada para conceder o retener estas condiciones en el amplio ejercicio de su discreción. No se le obligó a aceptarlas. La ley presupone que actuó de la mejor forma en beneficio del menor.

"Todas las condiciones arriba expuestas son las disposiciones usuales y acostumbradas que se incluyen en los préstamos hechos en Louisiana garantizados por hipoteca sobre inmuebles rústicos. Si bien aparentemente drásticas, aseguran el rápido cobro y, obviamente, facilitan conseguir el préstamo, ·y un interés mucho más ventajoso".(⁵)

Nos damos cuenta de los peligros envueltos en cualquier relajación indebida de las limitaciones tradicionalmente impuestas por el derecho civil a los tutores y padres con patria potestad. *Cf. Tutorship-Order for Hypothecation of Minors' Immovables—"Usual Security Clauses"*, 8 Tulane L. Rev. 438–40, criticando adversamente *Gumpert* v. *Signal*, 152 So. 403. Sin embargo, cada caso de esta naturaleza debe resolverse por sus propios méritos. Y de los hechos del presente, basta que digamos que es innecesario decidir aquí si iríamos tan lejos como lo hizo la corte en *United States* v. *524.72 Acres of Land*.

Nuestro enfoque del problema aquí envuelto quizá pueda exponerse, citando el caso de *Scottish-American Mortgage*

---

(⁵)Descartamos ciertos casos estatales de Louisiana como inaplicables, *Gumpert* v. *Signal*, reportado en 151 So. 136 (1933), 152 So. 403 (1934), 156 So. 174 (1934) porque allí estaba envuelta la frase "todas las cláusulas usuales en cuanto a garantía" que específicamente aparecen en las autorizaciones judiciales allí envueltas y que no aparecen en la resolución de la corte en este caso, de fecha 31 de julio de 1931.

De igual manera es inaplicable aquí la *Resolución del 27 de enero de 1900* de la *Dirección General de los Registros de España,* porque allí el tutor otorgó un contrato enteramente diferente que el autorizado: se le autorizó a vender los bienes del menor; sin embargo otorgó un contrato de venta con pacto de retro.

*Co. Ltd.* v. *Ogden et al.,* 21 So. 116 (La., 1896), donde la corte dijo a la pág. 118: "Los tutores, cuando contratan de conformidad con las deliberaciones de un consejo de familia, deben limitarse a las claras y bien definidas instrucciones que reciben. El contrato recibe su fuerza obligatoria del consejo de familia. Cualquier desviación de la recomendación *que inflija el más leve daño a los menores, o que renuncie cualquier derecho que puedan tener,* equivale a como si nunca se hubiera otorgado, . . . " (Bastardillas nuestras).

Usamos un lenguaje similar en *Costa* v. *Piaza,* 51 D.P.R. 689, donde dijimos a la pág. 698: "Es evidente que el propósito fundamental de la autorización judicial—la adquisición para los otros cinco condueños del condominio de José —fué cumplido. De los hechos probados no se desprende que haya habido intención alguna por parte del acreedor hipotecario de defraudar a los menores. Los intereses y derechos de los menores no han sido lesionados en manera alguna por la negociación del préstamo en la forma en que éste fué realizado. . . . Habiéndose realizado el fin legal de la negociación, la variante que hubo en los medios utilizados para su realización es, a nuestro juicio, en ausencia de fraude o confabulación imputable al acreedor, insuficiente para basar en ella la declaración de nulidad de la primera hipoteca. . . . ".

Por tanto se podría argumentar aquí que la escritura de hipoteca contenía sólo condiciones que son corrientes y acostumbradas en la clase de transacción envuelta; que ningún daño discernible se causó con ello a los menores; y que el propósito fundamental de la autorización se llevó a efecto sin que mediara imputación alguna de fraude o dolo. No es necesario que decidamos si dicho argumento prevalecería en todos los casos. Aquí sólo decidimos que varios factores adicionales son decisivos contra la reclamación de nulidad. El primero es que las anteriores hipotecas, que estaban a punto de ser ejecutadas y se pagaron con el préstamo aquí

hecho, contenían disposiciones para costas, gastos y honorarios de abogado; y por lo menos una de ellas devengaba intereses al 12 por ciento.([6])

El segundo factor adicional que tiene gran peso aquí es que el acreedor era un veterano demente, que tenía derecho a la misma protección judicial que los apelantes; y su tutor obtuvo contemporáneamente la aprobación de la misma corte de distrito para hacer el préstamo aquí envuelto con una disposición expresa en la resolución en cuanto al interés del 12 por ciento.([7])

Creemos conveniente aclarar una vez más que este caso envuelve una situación especial, y que en manera alguna estamos liberalizando los estrictos requisitos del artículo 614 del Código de Enjuiciamiento Civil, incluyendo los requisitos de sus incisos 6–9, al efecto de que la petición del tutor debe contener la naturaleza y las condiciones específicas de los contratos o transacciones a efectuarse a nombre del menor o incapaz.

*La sentencia de la corte de distrito será confirmada.*

---

([6]) Este tipo de interés era permisible cuando se otorgó la escritura aquí envuelta. Véase Ley núm. 5, Leyes de Puerto Rico, 1933, Sesión Extraordinaria, pág. 27.

([7]) Los apelantes, citando *Lókpez* v. *Fernández*, 61 D.P.R. 522, alegan ante nos, como motivo de nulidad en este caso, que el fiscal de distrito no compareció personalmente a la vista sobre la autorización judicial. Pero, si bien censuramos dicha práctica, no resolvimos en el caso de *Lókpez* que este defecto por sí solo daba lugar a la nulidad de la resolución.